IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **BLAKE DEWS,** | ) | |
| | ) | |
| Plaintiff | ) | CIVIL ACTION NO. |
| | ) | 2:05CV1045-T |
| v. | ) | |
| | ) | |
| **TROY UNIVERSITY, et al.,** | ) | |
| | ) | |
| **Defendants** | ) | |

### BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, Blake Dews, files this Brief in Support of his Motion for Partial Summary Judgement on his complaint.

### INTRODUCTION

"If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein. If there are any circumstances which permit an exception, they do not now occur to us." *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

U.S. Supreme Court Justice Robert Jackson's words were a ringing affirmation of the freedoms of conscience and expression that are central to American liberty. Unfortunately, however, the notion that the government may not dictate what people may express or believe about controversial subjects has remained hotly contested. Those in power inevitably find it convenient to restrict expression or even to dictate matters of conscience in order to ensure a

more just, fair, or orderly society or organization.

Today, one of the most likely places to find rules and regulations that restrict expression is at one's local college or university campus. This is a tragedy, for our nation's institutions of higher education are supposed to be bastions of free thought and expression, and in many cases they are now bastions of censorship. As the Supreme Court stated almost fifty years ago in *Sweezy v. New Hampshire*:

> The essentiality of freedom in the community of American universities is almost self-evident. No one should underestimate the vital role in a democracy that is played by those who guide and train our youth. To impose any strait jacket upon the intellectual leaders in our colleges and universities would imperil the future of our Nation. … Teachers and students must always remain free to inquire, to study and to evaluate, to gain new maturity and understanding; otherwise our civilization will stagnate and die.

*Sweezy*, 354 U.S. 234, 250 (1957).

Fortunately, courts across the country have upheld the basic constitutional rights of students and faculty by striking down speech-restrictive policies at public colleges and universities. *See, e.g.*, *Roberts v. Haragan*, 346 F. Supp. 2d 853 (N.D. Tex. 2004); *Bair v. Shippensburg Univ.*, 280 F. Supp. 2d 357 (M.D. Pa. 2003); *Booher v. Bd. of Regents*, 1998 U.S. Dist. LEXIS 11404 (E.D. Ky. Jul. 21, 1998); *Dambrot v. Central Michigan Univ.*, 839 F. Supp. 477 (E.D. Mich. 1993); *The UWM Post, Inc. v. Bd. of Regents of the Univ. of Wisc. Sys.*. 774 F. Supp. 1163 (E. D. Wis. 1991); *Doe v. Univ. of Michigan*, 721 F. Supp. 852 (E.D. Mich. 1989).

Today, Plaintiff asks this court to grant this partial Summary Judgment and restore fundamental freedoms at Troy University, which unlawfully restricts the free speech rights of its students by maintaining several policies that are both unconstitutionally overbroad and unconstitutionally vague. Justice Louis Brandeis famously wrote that "sunlight is said to be the

best of disinfectants." Plaintiff hopes that by shedding sunlight on the abuses at Troy University, liberty can once again flourish there.

## STATEMENT OF MATERIAL FACTS

Troy University's Student Handbook, "The Oracle," contains "a compilation of Troy University rules, regulations, policies, and procedures pertaining to all students and student organizations." Several of the policies contained in The Oracle impermissibly infringe upon the constitutional right to free speech to which students at Troy University, a public institution of the State of Alabama, are legally entitled.

The full text of the Policy on Harassment as attached hereto as Exhibit 1.  In the "Policy on Harassment," the University defines "sexual harassment" as "any type of sexually oriented misconduct that is unwelcome or inappropriate." (Please see Page 32 of Exhibit 1 immediately under the heading **III. Sexual Harassment**)  The policy provides that "[e]xamples of sexual harassment include, but are not limited to," among other things, "derogatory or demeaning comments about gender, whether sexual or not" and "name calling, relating stories, gossip, comments or jokes that *may be derogatory* toward a particular sex." (Emphasis added).  (Please see page 32 of Exhibit 1, item 4; and page 33 of Exhibit 1, item 12)

The Oracle also contains "Standards of Conduct," which define specific types of student misconduct that can lead to sanctions "up to and including suspension and expulsion."  The full text of the Standards of Conduct is attached hereto as Exhibit 2.  Sanctionable misconduct includes "[a]ny activity which creates a mentally abusive, oppressive, or harmful situation" and specifically provides that "[u]se of the mail, telephone, computer and electronic messages, or any other means of communication to insult, threaten, or demean another is prohibited." (Please see

page 43 of Exhibit 2, item 19). The Standards of Conduct also prohibit "lewd, indecent, obscene behavior or expression." (Please see page 43 of Exhibit 2, item 12).

The Oracle also contains a "Technology Use Policy" governing use of the university's various technologies. The full text of the Technology Use Policy is attached hereto as Exhibit 3. That policy states that "[c]ruelty, obscenity, crudity, and offensiveness for the sake of offensiveness, have no place in the public discourse of a University community. As members of the University community, we are all responsible to one another and to the thinking and thoughtful community of which each of us ought to be a valuable part." (Please see page 29 of Exhibit 3, last bullet on the page)

The Oracle defines a "student" as "any person who has been enrolled in and is attending, or has attended, any course offering of Troy University. It does not include prospective students."

## ARGUMENT

Defendant's speech codes are unconstitutional for two fundamental reasons: 1) they are overbroad; and 2) they are vague, prohibiting core protected speech without defining the nature or extent of the regulation. This combination results in speech held hostage. Students cannot speak freely on controversial topics. Troy University, a public institution, is legally obligated to uphold the First Amendment rights of its students. *See Dickey v. Alabama State Bd. of Educ.*, 273 F. Supp. 613, 618 (M.D. Al. 1967) ("[a] state cannot force a college student to forfeit his constitutionally protected right of freedom of expression as a condition to his attending a state-supported institution"). It has failed miserably.

To prevail on his Motion, Plaintiff must demonstrate that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(c). In this Motion for Partial Summary Judgment, Plaintiff seeks a declaration that the Policy on Harassment, Standards of Conduct Nos. 12, 19, and 23, and the Technology Use Policy (hereinafter "the Speech Codes") are facially unconstitutional under the First and Fourteenth Amendments to the United States Constitution. The facts that are the subject of this Motion are not in dispute. Defendants do not deny the existence or content of the policies that are the subject of this Motion; they deny only that the policies are unconstitutional, which is a question of law. The relevant sections of university policy are set forth in paragraphs 12 through 17 on pages 5 and 6 of Plaintiff's Complaint. Each Defendant responded, in paragraphs 12 through 17 of his individual Answer, that Troy University's policies "speak for themselves." Copies of the relevant portions of Answers to Plaintiff's Complaint are attached hereto as Exhibit 4. Plaintiff is entitled to judgment as a matter of law on the grounds that the Speech Codes are in direct violation of the Constitution.

    A.    <u>The Policy on Harassment</u>

For student conduct to constitute constitutionally unprotected harassment, it must be "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999). *See also Harris v. Forklift Systems*, 510 U.S. 17, 21-22 (1993) (harassment must be "severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive…."); *Hawkins v. Sarasota County Sch. Bd.*, 322 F. 3d 1279, 1288 (11th Cir. 2003) ("In the context of student-on-student harassment, damages are only available where the behavior is so severe, pervasive, and objectively offensive that it denies its victims equal access to education"). Troy's harassment policy contains no such requirement that punishable behavior be conduct be "severe or pervasive

enough to create an objectively hostile or abusive work environment" or that it "[bar] the victim's access to an educational opportunity or benefit," instead unjustly labeling merely "demeaning" or "insulting" expression as punishable harassment.

In addition, by broadly banning "any type of sexually oriented misconduct that is unwelcome or inappropriate," Troy University has abandoned the requirement of objective offensiveness, instead impermissibly conditioning individual free speech on the subjective reaction of listeners.  As the Supreme Court stated in *Street v. New York*, "[i]t is firmly settled that under our Constitution the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some listeners." *Street v. New York*, 394 U.S. 576, 592 (1969). *See also Bair v. Shippensburg Univ.*, 280 F. Supp. 2d 357, 369 (M.D. Pa. 2003) ("regulations that prohibit speech on the basis of listener reaction alone are unconstitutional both in the public high school and university settings"); *Doe v. Michigan*, 721 F. Supp. 852, 864 (E.D. Mich. 1989) ("[n]or could the University proscribe speech simply because it was found to be offensive, even gravely so, by large numbers of people").

The Policy on Harassment also provides examples of sanctionable verbal conduct that clearly include constitutionally protected speech. For example, the Policy prohibits "name calling, relating stories, gossip, comments or jokes that may be derogatory toward a particular sex"; "derogatory or demeaning comments about gender, whether sexual or not"; "suggestive" or "insulting" "comments or gestures"; and "asking questions about sexual conduct…." On its face, this policy could punish everything from an isolated statement that "men are pigs" (demeaning comments about gender), to a student working at a reproductive health clinic (asking questions about sexual conduct), to a student-written or acted parody or satire seeking to puncture some of the sanctimonious pretensions found as commonly on college campuses as in the outside world

(see *Hustler Magazine v. Falwell*, 485 U.S. 46 (1988), in which a unanimous Supreme Court gave full First Amendment protection to a vicious parody accusing a member of the clergy of engaging in a drunken incestuous orgy in an outhouse). The Policy makes no effort to distinguish between protected and unprotected speech, simply banning entire categories of speech under the guise of prohibiting harassment.

      B.      The Standards of Conduct

The University's Standards of Conduct contain several prohibitions that clearly infringe on constitutionally protected speech. Section 12 prohibits "lewd, indecent or obscene behavior or expression." This policy is unconstitutionally overbroad, as the state does not have the power to prohibit merely lewd or indecent speech. In *Papish v. Board of Curators of the University of Missouri*, 410 U.S. 667 (1973), a journalism graduate student was expelled for distributing a newspaper that contained "indecent speech" in violation of university policy. The Supreme Court ordered that the student be reinstated at the university, holding that "the mere dissemination of ideas—no matter how offensive to good taste—on a state university campus may not be shut off in the name alone of 'conventions of decency.'" *Id.* at 670. *See also Cohen v. California*, 403 U.S. 15, 25 (1971) ("one man's vulgarity is another's lyric. Indeed, we think it is largely because governmental officials cannot make principled distinctions in this area that the Constitution leaves matters of taste and style so largely to the individual"); *McKenzie v. State*, 279 Ga. 265, 266-67 (Ga. 2005) (holding that a statute prohibiting "obscene, lewd, lascivious, filthy, or indecent" speech is unconstitutionally overbroad because "[i]nstead of applying only to obscene speech, it applies to speech that is merely indecent.")

Section 19 of the Standards of Conduct broadly prohibits "[a]ny activity which creates a mentally abusive, oppressive, or harmful situation for another," and specifically prohibits "[u]se

of the mail, telephone, computer and electronic messages, or any other means of communication to insult, threaten, or demean another…." This section is both impermissibly overbroad and impermissibly vague.

It is overbroad because it prohibits speech clearly protected by the First Amendment, which does not permit an exception for speech that is merely "insulting" or "demeaning." "The constitutional guarantees of freedom of speech forbid the States to punish the use of words or language not within narrowly limited classes of speech." *Gooding v. Wilson*, 405 U.S. 518, 521-22 (1972) (internal citations omitted). *See also Brooks v. Auburn Univ.*, 296 F. Supp. 188, 194 (M.D. Al. 1969) ("most direct regulations or prohibitions on speech are precluded by the First Amendment"). Fortunately, "insults" and remarks that "demean" others do not, without far more, fall within those narrowly limited classes of speech that may be regulated. Indeed, one of the purposes of speech—particularly the speech commonly found on college campuses where new and challenging ideas are constantly being examined and discussed—is to demean ideas to which one takes sharp exception. As the Supreme Court has held, speech must be "protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises *far above public inconvenience, annoyance, or unrest*. There is no room under our Constitution for a more restrictive view." *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949) (internal citations omitted). (Emphasis added.)

The section of the policy prohibiting the creation of a "mentally abusive, oppressive, or harmful situation" is unconstitutionally vague. A governmental regulation is unconstitutionally vague if it fails to give a person adequate warning that his conduct is prohibited, or if it fails to set out adequate standards to prevent arbitrary and discriminatory enforcement of the regulation. *Chicago v. Morales*, 527 U.S. 41, 56 (1999). The Supreme Court has stated that:

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them…Third, but related, where a vague statue abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms.

*Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972).

The University does not define what it means by "mentally abusive," "oppressive," or "harmful," leaving students to guess—under threat of punishment—what the University means by these very general terms. As a result, students will censor themselves, holding back from engaging in protected expression because they do not know exactly what the policy prohibits. The result is an impermissible chilling effect on constitutionally protected speech.

Section 23 of the Standards of Conduct, which prohibits "[a]ny other activity or conduct not specifically stated herein that impairs or endangers any person, property, or the educational environment of the University," is also unconstitutionally vague. Under this policy, students could be punished for conduct or expression that they did not even know was prohibited—the very essence of vagueness. This policy is "so vague that its enforcement would violate the due process clause." *Doe v. Michigan*, 721 F. Supp. 852, 868 (E.D. Mich. 1989).

C. <u>The Technology Use Policy</u>

The Technology Use Policy provides that "[c]ruelty, obscenity, crudity, and offensiveness for the sake of offensiveness, have no place in the public discourse of a University community," and provides for disciplinary action against students who violate the policy. This is vastly overbroad. The Supreme Court and other federal courts have held, in cases *too numerous to mention*, that the government cannot ban speech simply because it is offensive, crude, or even

cruel. *See, e.g.*, *Hustler Magazine v. Falwell*, 485 U.S. 46 (1988) (in upholding *Hustler*'s right to publish a cruel parody suggesting that Jerry Falwell's first sexual encounter was a drunken tryst in an outhouse with his own mother, a unanimous court insisted that the parody at issue be given constitutional protection precisely because it was so slashing and cruel); *Cohen v. California*, 403 U.S. 15, 25 (1971) ("one man's vulgarity is another's lyric"); *Saxe v. State College Area Sch. Dist.*, 240 F.3d 200, 206 (3d Cir. 2001) (there is "no question that the free speech clause protects a wide variety of speech that listeners may consider deeply offensive"); *Booher v. Bd. of Regents*, 1998 U.S. Dist. LEXIS 11404 (E.D. Ky. Jul. 21, 1998) (holding unconstitutional a sexual harassment policy that failed to distinguish between "subjectively measured offensive conduct and objectively measured harassing conduct"); *Doe v. Michigan*, 721 F. Supp. 852, 864 (E.D. Mich. 1989) (noting that "[t]he Supreme Court has consistently held that statutes punishing speech or conduct solely on the grounds that they are unseemly or offensive are unconstitutionally overbroad").

## **CONCLUSION**

This Court has repeatedly reaffirmed the special importance of robust free expression in higher education. "The danger to free speech . . . is especially real in the University setting, where the State acts against a background and tradition of thought and experiment that is at the center of our intellectual and philosophic tradition. . . . For the University, by regulation, to cast disapproval on particular viewpoints of its students risks the suppression of free speech and creative inquiry in one of the vital centers for the nation's intellectual life, its college and university campuses." Gay Lesbian Bisexual Alliance v. Sessions, 917 F.Supp. 1548, 1553 (M.D. Al.1996) (internal citations omitted.).

To protect this free speech for Troy University students, Plaintiff respectfully requests a

summary judgment Ordering that Troy University's Policy on Harassment, Standards of Conduct, and Technology Use Policy are vague, overbroad, and unlawfully restrict protected speech on the basis of content.  This summary judgment is requested on Plaintiff's first, second, third and fourth claim for relief in that these Troy University policies: 1. Deny students the rights to freedom of speech and expression secured by the First Amendment to the Constitution of the United States; 2. deny students the rights to freedom of speech embodied in Article I, Section 4 of the Constitution of the State of Alabama; 3. Are facially overbroad and vague, constituting a violation of due process rights under the Fourteenth Amendment to the Constitution of the United States; and 4. Constitute unlawful regulation of the content of speech and treat similarly situated individuals differently based upon such content in violation of the Fourteenth Amendment to the Constitution of the United States.  Plaintiff further respectfully requests this Honorable Court include in its' Order and award of Plaintiff's reasonable attorney's fees and costs as provided by 42 U.S.C. § 1988 as Plaintiff's first, third and fourth claims for relief are brought under 42 U.S.C. § 1983.

Dated this the 22nd day of May, 2006

PARKMAN, ADAMS & WHITE


s/William C. White, II
Bar No: 6545-H70W
Attorney for Plaintiff
739 West Main Street
Dothan, AL 36301
(334) 792-1900
(334) 712-1352 Facsimile
Email: parkman@graceba.net

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Joseph V. Musso
Attorney for Defendant
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, AL 35203-2118
(205) 328-1900
(205) 328-6000 Facsimile
Email: joseph.musso@odnss.com

                                                s/William C. White, II
                                                OF COUNSEL