# EXHIBIT D

STATE OF ALABAMA	)

PIKE COUNTY	)

### AFFIDAVIT OF JERRY JOHNSON

Comes now Jerry Johnson, who being first duly sworn, deposes and says as follows:

1.  My name is Jerry Johnson. I am over eighteen (18) years of age, and I have personal knowledge regarding the information contained in this affidavit.

2.  I have worked for Troy University since 2000. I am currently Troy University's Chairperson of the Department of Art and Design, a position I have held continuously since 2000.

3.  During the Fall 2003 semester and the Spring 2004 semester, my immediate supervisor was Hal Fulmer, the Dean of the College of Communication and Fine Arts.

4.  During the Fall 2003 semester, I taught a class entitled Collaborative Studio 4435. One of my assignments to the students in the class was to create a substantial art piece or body of art and enter it into a juried art show to be sponsored by the Department of Art and Design and hosted by the Collaborative Studio class.

5.  Plaintiff Blake Dews was one of my students in Collaborative Studio 4435. As part of an assignment for the class, he created a piece of art which was to be included into the juried art show. Because the Collaborative Studio 4435 students were hosting the show and because I was aware of the complexity, craftsmanship and scale of work required in my assignment, I automatically included the assigned work in the art

show. All other student art work submitted to the show was reviewed by a panel of art professors so that they could decide which work would ultimately be included in the show. I did not see Mr. Dews completed art piece until the day he installed it in the Adams Memorabilia Room for the show. I did not know that Mr. Dews' completed art piece would contain photographs of full frontal nudity until that time.

6. The general public was not permitted to enter work into the art show. Entry was limited to works created by Troy University students. With the exception of one piece of art from a non-art major, the work consisted of art majors or minors, with many of the pieces created as part of my assignment for the Fall 2003 Collaborative Studio 4435 class.

7. In order to utilize space other than the already-committed art gallery in the Department of Art and Design building, the Department of Art and Design borrowed the Adams Memorabilia Room in the Hawkins-Adams-Long Hall ("HAL Hall"). The Adams Memorabilia Room does not exist on Troy University's campus as an art gallery; rather, its purpose is to house and display memorabilia chronicling the career of former Troy University President Dr. Ralph Adams and the history of the University itself.

8. Dr. Adams donated money to Troy University to build HAL Hall and one of his stipulations in donating the money was to build the Adams Memorabilia and house and display the memorabilia.

9. The Department of Art and Design had never used the Adams Memorabilia Room as space to display student art prior to the Fall 2003 show. Therefore, it was important to me as the Chairperson of the Department to return the room to its original purpose in a timely manner so that the Department of Art and Design could

2

hopefully use the room again for exhibits in a future semester. While the Fall 2003 art show was in progress, the memorabilia normally housed in the Adams Memorabilia Room had to be boxed up and stored elsewhere.

10. The Fall 2003 art show opened on December 2, 2003, to coincide with the Sounds of the Season Holiday Musical Spectacular ("Sounds of the Season"). Sounds of the Season is an annual concert during the Christmas holidays, put on by the College of Communication and Fine Arts. It features University musical groups (instrumental and choral) and it is attended by several hundred people. The general public is invited to attend. Adults pay a small admission charge and students and children are admitted free. In 2003, Sounds of the Season was held at the Claudia Crosby Theatre. The Claudia Crosby Theatre is located very near HAL Hall, with only the John M. Long Building ("band building") separating the two.

11. At the conclusion of the 2003 Sounds of Season, the audience was informed that the Department of Art and Design was presenting an art show in the Adams Memorabilia Room in HAL Hall and that everyone was invited to attend.

12. The Fall 2003 student art show included a piece created by Blake Dews, who was my student in Collaborative Studio 4435. Mr. Dews' work combined sculpture and photography. Some of Mr. Dews' photographs showed full frontal male nudity with exposed genitalia and some of his photographs showed full frontal female nudity with exposed genitalia.

13. A sign was placed at the entrance of the student art show notifying individuals that the exhibit contained nudity. Also, I personally stood outside the door of the show at times to inform people that the exhibit contained some nudity.

14. From December 4-6, 2003, Walter Trumbauer Theatre Competition ("Trumbauer Competition") was held on the Troy University campus. A large number of students in grades from 9-12 from across Alabama attended the theatrical event, as well as many of their parents and theatre teachers.

15. Also from December 4-6, 2003, Troy University's School of Music hosted the annual Southeastern United States Middle School Concert Band Clinic and Honor Bands ("SEUS Band Event"). A large number of middle school children from across the Southeast attended with a large number of parents and band directors.

16. The students attending the Trumbauer Competition and the SEUS Band Event participated in events that were held near the Adams Memorabilia Room, where the art exhibit was located.

17. I was informed by a secretary who worked in HAL Hall near the Adams Memorabilia Room that minors unaccompanied by an adult were attempting to enter the art show. Because the art show contained photographs displaying full frontal nudity and because there were a large number of minor school children on campus, the Adams Memorabilia Room was locked and access was limited to Troy University students and individuals over the age of 18 unless accompanied by a parent or guardian. That secretary who informed me of the minors trying to see the show was available with a key to unlock door when age-appropriate individuals wanted to see the show.

18. To protect from underage minors accessing the art show, the Adams Memorabilia Room remained locked after December 6, 2003, through the end of the show, with the secretary remaining available to provide access to age-appropriate persons, i.e., Troy University students and individuals over the age of 18 unless

4

accompanied by a parent or guardian. That secretary was performing a favor for the Department of Art and Design as she was not assigned to the Department and had other duties on top of providing access to the art show.

19. A number of individuals viewed the art show by simply asking that the room be unlocked. Individuals personally asked me to see the show and I facilitated these individuals in viewing the art.

20. The Adams Memorabilia Room exists to display memorabilia and a library of archives representing the history of Troy University and, particularly, the tenure of Dr. Ralph Adams, a former Troy University President.

21. The HAL Hall was built from money donated by Dr. Adams, who stipulated a number of conditions with regard to the building, including that the building contain a display of memorabilia and a library of archives representing the history of Troy University and, particularly, the tenure of Dr. Ralph Adams. (See Exhibit A to this Affidavit).

22. At the time I conceived the art show and at the time it opened, I had not set a timetable with regard to when the show would close. The only certain timetable was that it would run to the end of fall semester and then a decision could be made after the Christmas holidays as to it running any longer.

23. A few days before the start of the Spring 2004 semester, Hal Fulmer and I jointly and solely decided that the art show would be closed before the beginning of the Spring 2004 semester for the following reasons:

(a) individuals had already had an opportunity over several days to attend the art show, including individuals who attended the Sounds of the Season event;

(b) one of the reasons the art show existed was to exhibit the class assignments of the Fall 2003 Collaborative Studio 4435 class taught by me, and that class was over and a Spring 2004 Collaborative Studio class was about to start meeting, which would provide an opportunity for another show, where in fact, Plaintiff Blake Dews again exhibited works showing full frontal nudity;

(c) the pedagogical reason for holding the show, the primary reason for it to be held, had been completed: (i) students had the opportunity to make art; (ii) if their work was selected by me and other professors, their art work was exhibited; (iii) their work, if chosen, was displayed to an audience and to a team of qualified art judges, (iv) they competed for awards, which were given out; and (v) in most instances, including Mr. Dews', they received academic credit;

(d) the Department of Art and Design was relying on the assistance of a secretary, who did not work for the Department of Art and Design, to perform not only her regular duties, but to insure that minors did not have unrestricted access to the photographs depicting full frontal nudity; and

(e) there were concerns by me that some photographs could be construed to be in breach of Alabama obscenity laws.

24.   Most importantly, though, the reason Hal Fulmer and I decided to close the show was that the Adams Memorabilia Room was borrowed space. The room existed not to exhibit student art, but to fulfill part of the agreement tied to Dr. Adams' generous gift, that is, the display of memorabilia and a library of archives representing the history of Troy University and, particularly, the tenure of Dr. Adams. If the Department of Art and Design ever wanted to request the use of the room for future art shows, it would need to be sensitive of the agreement made between the University and Dr. Adams and his estate. To that end, it was important that the Adams Memorabilia Room be restored to its stated purpose with due speed.

25.   It took a few weeks to remove all of the artwork out of the Adams Memorabilia Room. It was necessary to coordinate the closing with the University's Physical Plant, the School of Music, and other art faculty in order to facilitate students picking up the work on their own or art instructors picking it up for them. The students or a professor had to be located and since some of the work included large furniture designs, moving logistics had to be coordinated.

26.   After the show was cleared out of the Adams Memorabilia Room, Director of the School of Music Dr. Bill Denison and I agreed to place a work order in the Physical Plant to have the walls repainted and holes patched from hanging the students' work. Moreover, the Department of Art and Design wanted to be kind enough to reorganize the space for the repositioning of the Adams memorabilia, which it subsequently did after the Physical Plant was able to complete the work order.

27.   Subsequent to the Fall 2003 art show, the Department of Art and Design has been permitted to hold other exhibits in the Adams Memorabilia Room.

28. Before the show was closed, Mr. Dews' piece of art was displayed in the art show the same amount of time as the other students' work in the show was displayed. Mr. Dews was the first to be instructed to remove his piece and some other students immediately began removing their work as well. As stated in Paragraph 25 above, it took a few weeks to remove all of the artwork out of the Adams Memorabilia Room.

29. I never entered into a contract with Plaintiff Blake Dews in any capacity, official or personal. As Mr. Dews' teacher in Collaborative Studio 4435, and only in my capacity as his teacher, I assigned him the task of creating a piece of art and further required that it be submitted into the juried art show. My reason for assigning him the task of creating the piece of art and for further requiring that it be submitted into the juried art show was strictly pedagogical.

30. I was Mr. Dews' instructor of record for his senior thesis class, which he took during the 2005 Spring semester. At the end of that semester, Mr. Dews' senior thesis work, which consisted of a series of photographs, was exhibited in the Department of Art and Design's Malone Gallery.

31. The Department of Art and Design operates a photography lab under the direction and supervision of Robert Joslin, the Department's photography instructor. The purpose of the photography lab is pedagogical. It exists as an extended classroom for Troy students. It is not open for the general public.

**[THIS SPACE INTENTIONALLY LEFT BLANK]**

Executed on this the 23rd day of May, 2006.

_____
Jerry Johnson

Subscribed and sworn to before me, this 23rd day of May, 2006.

*Misty F. Morgan*
Signature of Notary

NOTARY PUBLIC

MISTY F. MORGAN
NOTARY PUBLIC, AL STATE AT LARGE
MY COMMISSION EXPIRES OCTOBER 26, 2009

My commission expires: _____, 20___.

9

# AN AGREEMENT ESTABLISHING THE
# HAWKINS ADAMS LONG
# HALL OF HONOR

### Purpose

The building, the Hawkins Adams Long Hall of Honor, will be constructed, financed and furnished by a gift of up to $1 million contributed by Dr. Ralph W. Adams, Chancellor Emeritus of the Troy State System. A fund will be created within the Troy State University Foundation to accomplish this purpose. The building will be constructed adjacent to the John Maloy Long Building on the Troy State University campus. Additional contributions to the building fund by the donor and others are encouraged so long as such contributions are subject to the conditions of this fund, set forth herein.

### Gift Payment Schedule

Dr. Ralph W. Adams will make an initial gift payment of $150,000 by March 30, 1996, with annual payments of $150,000 by Dr. Ralph W. Adams being made by March 30, of the succeeding five years through the year, 2001. In 2002, the final payment of $100,000 will be made by Dr. Ralph W. Adams. This gift pledge of up to $1 million will be paid by the estate of Dr. Ralph W. Adams in the event of Dr. Ralph W. Adams' death. Construction of the building will begin by November 30, 1996.

### Conditions

1. The building will feature rooms devoted to the following purposes:

    - the display of memorabilia and a library of archives representing the history of Troy State University and, particularly, the tenure of Dr. Ralph Adams;

    - the National Band Association Hall of Fame;

    - offices for Drs. Ralph W. Adams, John Maloy Long, and their secretaries;

    - a concert and reception area.

2. The Board of Trustees of the University pledges to honor the donor's original intention for the building and, in the case of future renovation or redesign of the building, will apply said renovation or design toward a purpose or purposes which will most nearly accomplish the donor's intention.

**Fund Administration**

Contributions to this fund will be made absolutely to the Troy State University Foundation, which is located at Troy State University, Troy, Alabama, and is an exempt charitable organization as described in Sections 501(c) (3) and 170 (c) (2) of the Internal Revenue Code. Gifts to the fund shall be maintained and administered by the Foundation in accordance with Foundation policies and applicable State law.

**AGREED**

**FOR THE DONOR:**

_____        11/28/95
Dr. Ralph W. Adams                     Date

**FOR THE TROY STATE UNIVERSITY FOUNDATION:**

_____        11/28/95
Dr. Jack Hawkins, Jr.,                 Date
President of the TSU Foundation
and Chancellor of the TSU System

_____        11/28/95
Mr. John White                         Date
Vice President of the TSU Foundation

_____        11-28-95
Mr. Bill Hopper                        Date
Treasurer of the TSU Foundation

_____        11-28-95
Dr. John M. Long                       Date
Dean of Fine Arts, Troy State University

This agreement is executed in triplicate, each being worded as the others. An original signed copy is provided to the donors, to Troy State University Foundation and to Troy State University.